# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 2255 | **DATE** | 5/11/2011 |
| **CASE TITLE** | Barker vs. A.D. Conner, Inc. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the hearing on the petition for injunctive relief will be held on 5/13/2011 at 10:00 a.m., as previously scheduled [see 57]. The hearing will proceed by way of argument of counsel with questions from the Court. Respondent's requests for discovery and an evidentiary hearing [see 59, at 26-29] are respectfully denied at this time, subject to the discussion in the last paragraph of this order. For further explanation, please see below.

■[ For further details see text below.]      Notices mailed by Judicial staff.

## STATEMENT

Among the many issues addressed in the parties' briefs are the questions of (1) whether additional discovery should take place prior to a hearing and (2) whether the hearing should take the form of a "full blown evidentiary hearing" or an oral argument. Although the Court previously expressed preliminary views on these matters in its April 14, 2011 minute order [see 57], it reserved the option of switching course based on a fuller appreciation of the issues in the case and the administrative record compiled to date. After reviewing the parties' comprehensive briefs [see 58, 59, 61] and undertaking an initial review of the transcripts of the prior hearing before the ALJ, the Court remains of the view that given the nature of the case and the specific task that the Court must perform under the Section 10(j) scheme, the case should proceed to hearing on 5/13/2011 at 10:00 a.m. without additional discovery or the presentation of additional factual materials through live witnesses.

Section 10(j) of the National Labor Relations Act authorizes a district court to enter "just and proper" injunctive relief pending the final disposition of an unfair labor practices claim by the National Labor Relations Board ("Board"). *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 286 (7th Cir. 2001) (citing 29 U.S.C. § 160(j)). Like many other forms of preliminary injunctive relief, an injunction issued under the authority of Section 10(j) has been described as an "extraordinary remedy." *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1566 (7th Cir. 1996) (quoting *Szabo v. P*I*E* Nationwide, Inc.*, 878 F.2d 207, 209 (7th Cir. 1989)). Relief under Section 10(j) should be granted "only in those situations in which the effective enforcement of the NLRA is threatened by the delays inherent in the NLRB dispute resolution process." *Id.*

Although the courts have described the equitable relief available under Section 10(j) as "essentially a preliminary injunction" (*Electro-Voice*, 83 F.3d at 1567) and apply the "traditional standards used in injunctive cases" in evaluating petitions under Section 10(j) (see *Kinney v. Pioneer Press*, 881 F.2d 485, 494 (7th Cir. 1989)), Section 10(j) proceedings differ from ordinary preliminary injunction situations in a

fundamental sense. A motion for a preliminary injunction requires the district court to undertake its own analysis of the moving party's likelihood of success *on the merits* of its claim. By contrast, in considering the moving party's "likelihood of success" in the Section 10(j) context, "it is not the district court's responsibility * * * to rule on the merits of the Director's complaint." *Bloedorn*, 276 F.3d at 287. In fact, "a federal court has no jurisdiction to pass on the merits of the underlying case before the Board." *Electro-Voice*, 83 F.3d at 1567. Instead, "deciding the merits of the case is the sole province of the Board." *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 502 (7th Cir. 2008).

The Seventh Circuit has explained that the "court's mission" in a Section 10(j) case "is to determine whether the harm to organizational efforts that will occur while the Board considers the case is so great as to permit persons violating the Act to accomplish their unlawful objectives, rendering the Board's remedial powers ineffectual." *Electro-Voice*, 83 F.3d at 1567. In undertaking that task, "[t]he district judge must assess not only the harm that may go unchecked during the 'notoriously glacial' course of NLRB proceedings * * * , but also the probability that the General Counsel *will succeed in convincing the NLRB* that someone has in fact violated the labor laws." *Kinney*, 881 F.2d at 491 (emphasis added). In short, as the court of appeals has succinctly summarized, "[a]ssessing the Director's likelihood of success calls for a *predictive judgment about what the Board is likely to do* with the case." *Bloedorn*, 276 F.3d at 288 (emphasis added).

With the foregoing discussion of the Section 10(j) scheme as relevant background, the Court turns to the issues of whether discovery and/or a full blown evidentiary hearing are appropriate in this case. First, in regard to discovery, the parties have cited some prior decisions in which courts have allowed limited discovery in a Section 10(j) proceeding. Nevertheless, the Court concludes that Respondent has not made the case for allowing discovery in under the present circumstances. To begin with, the concerns about "surprise and inadequate preparation" expressed by the court in *Madden v. NLRB*, 229 F. Supp. 490, 492 (N.D. Ill. 1964), do not appear to be present in this case. There already has been a full hearing before the NLRB in which both Petitioner and Respondent participated and numerous witnesses testified. In contrast to the situation where the petition is filed prior to a hearing before the ALJ, by Respondent's own lights, "[t]his case is now in its later stages, and all that is needed is the ALJ's final decision." Resp. Br. [59] at 25.

Respondent's more specific argument for taking the deposition of Director Barker is not persuasive. The sole argument advanced in Respondent's brief for why the deposition testimony would be "relevant and necessary" is Respondent's insistence that it needs to "test the veracity of" the Director's verification of the petition. Resp. Br. [59] at 27. In view of the voluminous record compiled before the ALJ, which includes the testimony of numerous witnesses from both labor and management in the underlying dispute, as well as the lengthy briefs filed by the parties in this Court, disposition of the petition is very unlikely to turn on anything that the Director may say concerning the extent of his personal knowledge concerning the compilation of the materials supporting the petition. Furthermore, in regard to any other discovery of Board personnel, it is clear in the Seventh Circuit that "the scope, conduct or extent of the preliminary investigation [of the NLRB] are not matters relevant to or material for consideration on the issue to be adjudicated on hearing of a Section 10(j) petition." *Madden v. International Hod Carriers' Building & Common Laborers*, 277 F.2d 688, 693 (7th Cir. 1960).

In sum, Respondent has provided no persuasive reason for adding to the already voluminous materials compiled before the ALJ, nor has it shown how any additional factual material not before the agency is likely to aid the Court in making "its predictive judgment" about what the agency is likely to do. In fact, the high likelihood that all of the factual evidence that the ALJ and ultimately the Board will consider in determining the merits of the underlying case is contained in the administrative record strikes the Court as a sound argument for relying on precisely that record in rendering a "predictive judgment."

# STATEMENT

In regard to whether an evidentiary hearing is warranted, a similar analysis applies. In requesting such a hearing, Respondent focuses on "conflicting testimony" in the administrative record that it contends cannot be "resolved" without an evidentiary hearing. Resp. Br. [59] at 26-27. Again, as with discovery, district courts in this circuit have not taken a uniform approach to the question of whether to decide a Section 10(j) petition on the basis of the administrative record alone or with the aid of additional factual material presented during an evidentiary hearing in the district court. Compare *Lineback*, 546 F.3d at 499 (evidentiary hearing held to take evidence beyond that presented at the administrative hearing) with *Bloedorn*, 276 F.3d at 287 (petition ruled on based solely on the written record of the evidence presented before the ALJ). The Seventh Circuit has noted the different approaches, but without any commentary on whether one is preferred over the other. [FN1]. It appears, therefore, that the matter is left to the discretion of the district court.

> [FN1] The court of appeals has noted that when the district court opts not to hear live testimony, and thus did not have the opportunity to observe the demeanor or the witnesses, it "need not be especially reluctant to hold that the district court reached clearly erroneous results." *Electro-Voice*, 83 F.3d at 1566 n.15.

As noted above, in advocating for an evidentiary hearing, Respondent's focus is not on adducing new information, but rather on providing an opportunity for the Court to "assess the credibility of the parties' witnesses." Resp. Br. [59] at 28. That focus raises a concern captured by the Seventh Circuit more than two decades ago in the *Kinney* case: "When the district court hears live testimony, instead of working from the administrative record, should it be entitled to assess credibility, even though the Board might evaluate the witnesses differently?" 881 F.2d at 489. That same concern is echoed in Judge Will's endorsement of the proposition that "the Court may not resolve conflicting factual evidence and questions of credibility if the Board might reasonably resolve those issues in favor of the plaintiff." *Madden*, 229 F. Supp. at 493. [FN2].

> [FN2] To be sure, as Respondent notes, Judge Will did allow some discovery to avoid surprise and allow adequate preparation, but any use of the discovery obtained in that case to tee up credibility issues for resolution in the district court, as Respondent here proposes to do, would have been inconsistent with the rest of the opinion.

The Court is aware of other decisions in which it appears that district judges may have made credibility judgments in Section 10(j) proceedings (see, *e.g.*, *Kinney*, 881 F.2d at 488) and is not prepared to opine that such judgments or findings are either forbidden or necessarily inappropriate under the Section 10(j) scheme. Nevertheless, the case law suggests that, at least in the main, credibility judgments are to be made by the agency, not the courts, given their very different roles. As the Seventh Circuit's opinion in *Electro-Voice* illustrates, even where there is "conflicting testimony" and "credibility questions" abound, a court might reasonably conclude that the Petitioner has met his burden of showing a "better than negligible chance of success" without any need to resolve the credibility issues. [FN3]. 83 F.3d at 1570-71. But, as *Electro-Voice* also makes clear, the question before the agency is different and much more pointed: "If the witnesses making these allegations are found credible by the Board, that finding would support a determination that the questioning violated the Act." *Id.* at 1571 n.18. The salient point is that the ultimate determinations on whether the witnesses are credible and whether the Act has been violated are made by the Board, not the district court on a motion for preliminary relief under Section 10(j).

> [FN3] The parties dispute the precise standard – "better than neglible," "some chance," or "more than a mere possibility" – that Petitioner must meet in regard to its likelihood of prevailing before the Board, but the Court need not address that debate at this time.

Finally, as noted above, the difference in the respective roles of the district court and the agency also explains

| STATEMENT |
|---|

why Respondent's reliance on *Medeco Security Locks, Inc. v. Swiderek*, 680 F.2d 37 (7th Cir. 1981), is misplaced. While *Medeco* stands for the propositions that "in general, a motion for a preliminary injunction should not be resolved on the basis of affidavits alone," and that "[n]ormally, an evidentiary hearing is required to decide credibility issues," a Section 10(j) petition is not a "normal" proceeding, nor is it a preliminary injunction proceeding. When a party brings a motion for a preliminary injunction, the court must resolve the likelihood of success *on the merits* of the plaintiff's federal complaint. As explained in more detail above, in a Section 10(j) proceeding, by contrast, a federal court does not even have jurisdiction to pass on the actual merits of the Board's case. Rather, the court's task is to make a prediction on how the Petitioner's case will fare before the agency, "which is principally charged with the administration and enforcement of the [NLRA]." *Bloedorn*, 276 F.3d at 287.

In sum, after a preliminary review of the briefs and administrative record in this matter, the Court concludes that in view of the nature of the Section 10(j) scheme and the Court's defined role in that scheme, neither discovery nor a formal evidentiary hearing appear to be warranted at this time. In so concluding, the Court believes that the likelihood that the disposition of this matter will turn on any need to reconcile conflicting testimony on the basis of credibility determinations is sufficiently remote that proceeding to a hearing by way of oral argument by counsel on May 13, as previously scheduled, remains appropriate. With that said, in the event that further study of the record, briefs, and pertinent case law convinces the Court that this is one of the relatively rare cases in which the disposition of a Section 10(j) petition requires a credibility finding by the district judge, the Court will advise the parties and set the matter for status in advance of any evidentiary hearing that may be warranted.